```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _09/24/2024_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOORDASH, INC.,

                Plaintiff,

-against-

CITY OF NEW YORK,

                Defendant.

21 Civ. 7695 (AT)

PORTIER, LLC,

                Plaintiff,

-against-

CITY OF NEW YORK,

                Defendant.

21 Civ. 10347 (AT)

GRUBHUB INC.,

                Plaintiff,

-against-

CITY OF NEW YORK,

              Defendant.

21 Civ. 10602 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiffs, DoorDash, Inc. ("Doordash"), Portier, LLC ("Uber"), and Grubhub, Inc. ("Grubhub"), seek an order sealing or redacting certain exhibits filed in connection with the parties' cross-motions for summary judgment.[1] Pl. Mot., ECF No. 197.[2] Defendant, the City of New York (the "City"), opposes certain of Plaintiffs' proposed sealings and redactions. Def.

---

[1] Plaintiffs previously moved to seal or redact certain materials in connection with their Rule 56.1 statements and cross-motions for summary judgment. ECF Nos. 122, 129, 132, 147. The Court held Plaintiffs' motions in abeyance pending its decision on Plaintiffs' omnibus motion to seal. ECF No. 169.

[2] All citations are to the docket in *DoorDash v. City of New York*, No. 21 Civ. 7695.

Mem., ECF No. 211.  For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

The public enjoys a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  This presumption of public access "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).  When a party moves to place documents under seal, it "bears the burden of showing that higher values overcome the presumption of public access." *Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, No. 24 Misc. 269, 2024 WL 4169353, at *2 (S.D.N.Y. Sept. 12, 2024) (quoting *Kewazinga Corp. v. Google LLC*, No. 20 Civ. 1106, 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024)).

Courts conduct a three-step analysis.  First, a court determines whether the relevant material constitutes a "judicial document," i.e., a document that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).  The relevance of a specific document does not depend on "which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).  Rather, what is important is whether the document "would reasonably have the *tendency* to influence a district court's ruling on a motion." *Id.*

If material constitutes a "judicial document," the "common law presumption of access attaches," and a court must evaluate the "weight of that presumption." *Lugosch*, 435 F.3d at 119.

"[T]he presumption of public access is at its highest when the material is relevant to a court's decision on a dispositive motion." *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2022 WL 329211, at *1 (S.D.N.Y. Feb. 3, 2022).  The presumption is "weaker where the 'documents play only a negligible role in the performance of Article III duties,'" *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (quoting *Amodeo*, 71 F.3d at 1050), including, for example, where the relevant material is "largely collateral to the factual and legal issues central to the resolution" of the parties' dispute, *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017).

Finally, a court must balance the weight of the presumption against "competing considerations." *Lugosch*, 435 F.3d at 120 (quoting *Amodeo*, 71 F.3d at 1050).  These considerations include but are not limited to "'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1050).  They also include "the protection of sensitive, confidential, or proprietary business information." *Ripple*, 2022 WL 329211, at *1.  "[B]argained-for confidentiality" through vehicles like protective orders will not, however, overcome the presumption of public access.  *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018).  Ultimately, sealing judicial documents "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

## DISCUSSION

The documents at issue here, "by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment," are "unquestionably judicial documents." *Id.* at 123.  The more relevant issues, then, are the strength of the

presumption of access for each document and the corresponding weight of competing considerations.

In their motion, Plaintiffs offer at least one of five bases for each of their proposed redaction or sealing requests: "(1) competitively sensitive contractual terms and/or negotiations with third parties; (2) proprietary, sensitive information about data security practices; (3) internal marketing, operations, and/or product-related business strategy information; (4) competitively sensitive internal business data; and (5) personal identifying information." Pl. Mot. at 1. For each category, Plaintiffs provide one to six paragraphs explaining the general types of harms that could result from disclosure: For example, disclosure of Plaintiffs' contracts with other companies could "be highly detrimental to Plaintiffs' competitive standing and business relationships with current and prospective partners," and disclosure of their strategic materials could "diminish Plaintiffs' abilities to create independent, proprietary marketing strategies and would jeopardize their standing in a growing market." *Id.* at 4, 8 (cleaned up) (citation omitted).

Having reviewed the parties' submissions and the proposed redactions, the Court concludes that, for several categories of documents, Plaintiffs have not made a "particular and specific" factual demonstration of the harm that would result from disclosure. *United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527, 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015) (quoting *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011)). Their broad generalizations do not justify sealing the better portion of this action's summary judgment record. *Id.* (explaining that "conclusory statements that documents contain confidential business information" do not justify sealing materials).

Public disclosure of certain documents, however, may cause harm to Plaintiffs' competitive standing and the interests of third parties. The Court therefore grants in part

4

Plaintiffs' motion to seal and will allow Plaintiffs to resubmit certain materials with more targeted proposed redactions. Because of the large number of exhibits at issue, the Court divides Plaintiffs' summary judgment materials into several broad categories and addresses each in turn.

I. <u>Rule 56.1 Statements, Depositions, and Materials Prepared in the Course of Litigation</u>

Plaintiffs propose a range of sealings and redactions to the parties' Rule 56.1 statements, depositions, and other materials prepared in the course of litigation, such as memoranda of law and responses to interrogatories. *See* ECF Nos. 169, 197-1 to -3. Some of the proposed redactions conceal the names of individual restaurants that use Plaintiffs' services. Others conceal specific revenue numbers, descriptions of data security protocols, and broader statistics about how many diners use Plaintiffs' services to order delivery.

The Court's summary judgment order—an unredacted version of which was sent to the parties—relied on a significant amount of the information that Plaintiffs would have redacted from the parties' Rule 56.1 statements and the underlying depositions and other litigation materials. Some of that information encompasses aggregate data describing how many restaurants use Plaintiffs' services in New York City, a fact that goes to the strength of the City's interest in regulating Plaintiffs' speech. *See* ECF No. 212 at 22, 24–25 (explaining that, to satisfy intermediate scrutiny, the City must identify a "substantial" government interest (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)). The Court also relied on deposition testimony describing why customer information is valuable, what categories of restaurants are provided access to that data, and how Plaintiffs restrict what restaurants can do with that data, information that similarly bears on the City's interest in regulating restaurants' access to customer data and the options it had when designing a regulation. *Id.* at 24 (explaining that the City must also demonstrate that its regulation "is not

5

more extensive than is necessary" to serve its "substantial" government interest (quoting *Cent. Hudson*, 447 U.S. at 566)).  Because this information is "relevant to dispositive motions," a "high presumption of public access attaches."  *Ripple*, 2022 WL 329211, at *2.

Still, countervailing interests support allowing certain of Plaintiffs' proposed redactions.  The Rule 56.1 statements, depositions, and other litigation material contain revenue numbers, the names of specific restaurants that contract with Plaintiffs, and internal data security protocols.  Courts commonly find that documents containing confidential information about a corporation's business models, its sources of revenue, and the amounts of revenues and sales it receives from different products may properly remain under seal.  *See Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (listing cases).  The same goes for data security protocols.  *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13 Civ. 2581, 2021 WL 4135007, at *4 (S.D.N.Y. Sept. 10, 2021) (noting that "protecting a company's IT information fits comfortably within other 'higher values' consistently recognized by courts in this Circuit, such as the protection of 'sensitive business information'" (citation omitted)).  And, revealing the details of negotiations with restaurants that use Plaintiffs' services could adversely impact the "privacy interests of third parties . . . relating to their identity, the terms of financial negotiations . . . and [the] timing of the commercial relations [with the litigants]."  *N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 211 (S.D.N.Y. 2024).

Thus, although Plaintiffs' proposed sealings and redactions to the Rule 56.1 statements, depositions, and other litigation materials are currently overbroad, the Court will grant Plaintiffs leave to file a renewed sealing motion with a narrower set of proposed redactions.  The proposed

redactions must be limited to nonpublic revenue and pricing information, the names of specific restaurants, and internal data security protocols.

II.     Agreements with Restaurants

Plaintiffs ask the Court to seal hundreds of contracts between themselves and the restaurants who use their services, asserting that the contracts contain, *inter alia*, "negotiated pricing structures, marketing budgets, and restrictions on data usage" that "counterparties [and competitors] could unfairly leverage . . . to undermine Plaintiffs' standing in the marketplace." Pl. Mot. at 4.  Plaintiffs also flag that they and their business partners "expected the negotiated contract terms to remain confidential and to be treated with the utmost sensitivity," highlighting the fact that many of these contracts include "non-disclosure or confidentiality obligations" that "reflect[] the business partners' commitments and understanding that the terms would remain private." *Id.* at 5.

The terms of Plaintiffs' agreements with New York City restaurants bear heavily on the Court's analysis of the constitutionality of the law at issue, so the presumption of public access to these documents is strong.  *See Ripple*, 2022 WL 329211, at *2.  The Court agrees with Plaintiffs, however, that weighty countervailing interests, namely, "the protection of sensitive, confidential, or proprietary business information," *id.* at *1, and the privacy interests of third parties, *see N. Star*, 710 F. Supp. 3d at 211, justify some protection.  The pricing terms offered to specific clients, for example, may very well cause Plaintiffs or the restaurants competitive harm should they be made public.  *See Cunningham v. Cornell Univ.*, No. 16 Civ. 6525, 2019 WL 10892081, at *2 (S.D.N.Y. Sept. 27, 2019).  Moreover, the specifics of the pricing terms and the identities of the individual restaurants are not material to the Court's legal analysis.

7

Although the Court will not permit Plaintiffs to file the entirety of their agreements with restaurants under seal, it will allow Plaintiffs to redact the portions of those agreements that would cause them or the contracting restaurants "particular and specific" harm, such as the names of individual restaurants, individual persons, and pricing terms. *Wells Fargo Bank*, 2015 WL 3999074, at *4 (quoting *Lytle*, 810 F. Supp. 2d at 630).

III. <u>Security Assessments and Agreements with Security Vendors</u>

Plaintiffs also ask the Court to keep under seal contracts between themselves and their data security vendors, in addition to exhibits containing information about Plaintiffs' data security practices and external assessments of Plaintiffs' data security systems. Pl. Mot. at 5–6.

Material concerning Plaintiffs' efforts to ensure data security is "largely collateral to the factual and legal issues central to the resolution" of the parties' cross-motions for summary judgment, so the weight of the presumption of public access is low. *Oliver Wyman*, 282 F. Supp. 3d at 684. Furthermore, the countervailing interests are strong. As the Second Circuit explains, "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amodeo*, 71 F.3d at 1050 (quoting *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990)). Here, the data security vendors are "innocent third parties" with no direct stake in this litigation. *Id.* The Court, therefore, grants Plaintiffs' motion to seal their agreements with data security vendors and security assessments.

IV. <u>Internal Communications and Strategic Documents</u>

Finally, Plaintiffs request that a selection of their internal policies and communications, in addition to several documents and presentations discussing marketing goals and business strategy, remain under seal.

8

Because this material is "largely collateral to the factual and legal issues central to the resolution" of the parties' cross-motions for summary judgment, the weight of the presumption of public access is low. *Oliver Wyman*, 282 F. Supp. 3d at 706. Countervailing interests also support keeping these documents under seal, as "specific business information and strategies, . . . if revealed, 'may provide valuable insights into a company's current business practices that a competitor would seek to exploit.'" *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (quoting *Encyc. Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998)). For that reason, "[c]ourts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard." *Kewazinga Corp.*, 2021 WL 1222122, at *3 (quoting *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 18 Civ. 549, 2019 WL 2918026, at *2 (N.D.N.Y. June 18, 2019)). The Court therefore grants Plaintiffs' motion with regard to these categories of documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to seal is GRANTED IN PART and DENIED IN PART. Specifically:

1. Plaintiffs' motion to seal and/or redact portions of the Rule 56.1 statements, depositions, and other materials prepared in the course of litigation is DENIED without prejudice. By **October 24, 2024**, Plaintiffs shall propose more narrowly tailored redactions consistent with this order. If they have not done so by that date, the Court shall direct the Clerk of Court to unseal those exhibits.

2. Plaintiffs' motion to seal the agreements with restaurants is DENIED without prejudice. By **October 24, 2024**, Plaintiffs shall propose specific redactions that comply with the Court's order. If they have not done so by that date, the Court shall direct the Clerk of Court to unseal those exhibits.

3. Plaintiffs' motion to seal the security assessments and agreements with security vendors is GRANTED.

9

4. Plaintiffs' motion to seal the internal communications and strategic documents is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 129, 132, and 197 in No. 21 Civ. 7695; ECF Nos. 101, 104, and 165 in No. 21 Civ. 10347; and ECF Nos. 104, 107, and 182 in No. 21 Civ. 10602.

SO ORDERED.

Dated: September 24, 2024
      New York, New York

                                              ANALISA TORRES
                                    United States District Judge